**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| SITEPRO, INC., <br><br> Plaintiff, <br><br> v. <br><br> TANKLOGIX, LLC <br><br> Defendants. | **C.A. No. 6:24-CV-00642** <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff SitePro, Inc. ("SitePro") files this Original Complaint for patent infringement against Defendant TankLogix, LLC ("TankLogix" or "Defendant") respectfully alleging as follows:

**RELATEDNESS TO OTHER CASES**

1.    This action is related to other actions considered by the District Court for the Western District of Texas, Waco Division, under Judge Alan D Albright.  Specifically, SitePro asserted U.S. Patent Nos. 8,649,909 (the "'909 Patent"); 9,898,014 (the "'014 Patent"); 11,175,680 (the "'680 Patent"); and 11,726,504 (the "'504 Patent") (collectively, the "Asserted Patents") in *SitePro, Inc. v. WaterBridge Resources, LLC et al.*, Case No. 6:23-cv-00115-ADA-DTG, another action that it had previously filed in the Waco Division, and in which the Waco Division Court had construed claims of those patents.  The Waco Division Court had also considered numerous motions, including discovery motions and dispositive motions, and had resolved disputes relating to the technology at issue in these patents.

## THE PARTIES

2.      Plaintiff SitePro, Inc. is a Delaware corporation having its principal place of business at 9502 US-87, Lubbock, TX 79423.  SitePro has an additional place of business located at 1523 E. Sonterra Blvd., San Antonio, TX 78258.

3.      Defendant TankLogix, LLC is a Utah limited liability company with a registered principal place of business at 1082 West 1700 North, Logan, UT 84321.  TankLogix also maintains a regular and established place of business at 12200 W. Highway 80E, Odessa, TX 79765-9610.  TankLogix may be served through its registered agent, Gary Wilson, 12200 W. Highway 80E, Odessa, TX 79765-9610.

4.      A substantial part of the events giving rise to SitePro's causes of action as alleged herein occurred in the Western District of Texas and have a direct effect on SitePro in the Western District of Texas.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271.

6.      As discussed in greater detail below, TankLogix has committed acts of patent infringement and/or has induced and/or contributed to acts of patent infringement by others in this judicial district, the State of Texas, and elsewhere in the United States, and continues to do so willfully and without authorization by making, using offering for sale, selling, or importing various products or services that infringe SitePro's Asserted Patents (defined below).

7.      This Court has personal jurisdiction over TankLogix because TankLogix has minimum contacts within the State of Texas; TankLogix has purposefully availed itself of the privileges of conducting business in the State of Texas; Defendant regularly conducts business

2

within the State of Texas; and SitePro's causes of action arise directly from TankLogix's business contacts and other activities in the State of Texas, including by virtue of TankLogix's infringement in the State of Texas. Indeed, TankLogix has advertised, promoted, offered for sale, sold and/or distributed and continue to advertise, promote, offer for sale, sell, and/or distribute infringing products to customers and potential customers in this judicial district. SitePro, its customers, and its potential customers reside in the State of Texas, including in this judicial district and therefore TankLogix's acts giving rise to this lawsuit and the harm SitePro has suffered have both occurred in this judicial district.

8.    Venue is appropriate in this judicial district under 28 U.S.C. § 1400(b) because TankLogix has committed acts of infringement in and/or has induced and/or contributed to acts of infringement by others in this District, and maintains a regular and established place of business in, this District as set forth above, including at least at TankLogix's Odessa office at 12200 W. Highway 80E, Odessa, TX 79765-9610.

## BACKGROUND

9.    For more than a decade, SitePro has been at the forefront of data analytics, monitoring, and control of fluids in the energy (SWD and Oil & Gas), municipal, and agriculture industries. SitePro initially sought to enable the digital oil field. From there, it evolved its technology for use in the municipal and agriculture industries. SitePro focuses on developing market-leading software and hardware products that deliver easy-to-use, scalable fluid analytics, monitoring, and control. SitePro has developed and continues to develop state-of-the-art, award-winning software products, hardware, and equipment. SitePro combines an integrated, best-in-class cloud-based software as a service (SaaS) and mobile application. Both SitePro's software and hardware products and cloud services are vital to SitePro and its customers' businesses.

3

10. SitePro began as AmpliSine Labs, LLC, which was founded in November 2009. The company was founded to focus on reimagining control and management systems in the underserved SWD market, which in 2011 was a process-intensive business with limited viable software options outside of expensive traditional SCADA systems. AmpliSine Labs changed its name to SitePro, LLC (Texas entity) in July 2018 and then ultimately to SitePro, Inc. effective January 1, 2019.

11. In the early days of the company, SitePro first explored using existing SCADA systems but quickly determined that the then state-of-the-art SCADA systems were inadequate for the SWD industry and the problems facing their potential SWD customers. So SitePro's early executive team, Aaron Phillips and David Bateman, developed their own proprietary system from scratch.

12. Traditional oil field control systems had an automation system that was installed onsite to control the equipment on that site, including pumps, valves, actuators, etc., while also gathering data from sensors within the system or input from individuals at the site. Then, a separate system would allow for access to that data from a web-based platform.

13. SitePro's system was (and is) unique and went well beyond these traditional systems in developing proprietary technology that combined the onsite automation system with the web-based control platform in one application. SitePro became the missing link in oilfield digital fluid logistics. For example, SitePro's proprietary system features a "no-code" configuration module, advanced ticketing capabilities, and real-time integrated mapping and visualization never previously offered or envisioned by traditional SCADA systems. SitePro later departed from the physical server setup used by traditional systems at the time, and instead built its new platform on Microsoft's Azure cloud.



SitePro's proprietary system monitors tank levels, volumes, pressures, flow rates, and many other data points in real-time. It allows organizations to control pumps and valves right from a smartphone or a computer. SitePro's system is robust and comprehensive, covering real-time data analytics, truck ticketing transactions, and remote management of multiple sites (like an SWD facility) remotely from an office in a large city. SitePro's system also offered scalability well-beyond traditional SCADA systems by pre-programing and creating new parameters for certain nodes and equipment commonly found in a SWD system so that customers (regardless of technical aptitude/familiarity) could quickly and safely add, remove, edit, and control equipment, such as actuators, pumps, valves, and sensors. SitePro additionally developed a mobile application so that its customers could access data, collect data, and control equipment from their mobile devices. In fact, SitePro's proprietary system enabled a sensor reading to be delivered to a user's browser or mobile application less than one second after it was taken in the field.

14.    SitePro was also awarded multiple United States patents for its inventions in many technical areas including edge computing, protocol translation (e.g., in which a remote server speaks a single universal language to monitor and control systems in the field, and local "site master controllers" translate those commands in the universal language to device-specific

protocols, like Modbus, USB, etc.), and multi-tenant SaaS systems for monitoring and controlling fluid-handling equipment.

15.    SitePro owns the entire right, title, and interest in and to each of the following patents, including the right to seek damages for past and ongoing infringement: U.S. Patent Nos. 8,649,909 (the "'909 Patent"); 9,898,014 (the "'014 Patent"); 11,175,680 (the "'680 Patent"); and 11,725,504 (the "'504 Patent") (collectively, the "Asserted Patents").  SitePro also owns many other patents and patent applications that are not asserted in this case at this time.

16.    The '909 Patent issued on February 11, 2014.  A true and correct copy of this patent is attached hereto as Exhibit 1.

17.    The '014 Patent issued on February 20, 2018.  A true and correct copy of this patent is attached hereto as Exhibit 2.

18.    The '680 Patent issued on November 16, 2021.  A true and correct copy of this patent is attached hereto as Exhibit 3.

19.    The '504 Patent issued on August 15, 2023.  A true and correct copy of this patent is attached hereto as Exhibit 4.

20.    The named inventor of each of the SitePro Patents is Aaron Phillips.  The title of each of the SitePro Patents is "Remote control of fluid-handling devices."

21.    Aaron Phillips invented and had a complete conception of the subject matter covered by the aforementioned patents at least as early as January 2012.  The date of invention for these patents is supported by significant evidence (e.g., original inventor notes; early versions of code; customer invoices).

22.    SitePro has complied with the marking requirements of 35 U.S.C. § 287 at least because    its    patents    are    displayed    publicly    on    SitePro's    website—

https://www.sitepro.com/legal/patent-information—as well as SitePro's customer login portal—https://auth.sitepro.com/Account/Login, and because 35 U.S.C. § 287 does not preclude the recovery of pre-suit damages at least because there are no unmarked patented articles subject to a duty to mark, e.g., for Asserted Patents in which only method claims are asserted.

23.     On TankLogix's website, TankLogix advertises that it provides "innovative, robust automation for the oil and gas industries." *See* https://www.tanklogix.com/about/.  Tanklogix's website offers a variety of services, including "Oilfield Automation," "Instrumentation & Electrical," "Hosted Ignition," "Remote Monitoring," "Motors and VFDs," and "Site Safety Systems."  Upon information and belief, these services are each available to TankLogix's clients and customers through TankLogix's Ignition-Hosted Automation System ("the Accused System"). *Id.*

24.     TankLogix indicates that it offers "Comprehensive Hosted SCADA" services as part of the Accused System.  *See* https://www.tanklogix.com/hosted-ignition/.  TankLogix further states that it is an "Ignition Registered Integrator."  *Id.*

## Comprehensive Hosted SCADA

TankLogix Hosted SCADA (Supervisory Control and Data Acquisition) is powered by Inductive Automation's Ignition platform. Easily connect with, collect data from, and control your field devices over our secure network. Your data is safely hosted on our cloud-based infrastructure, providing top-tier reliability and integrity. Intuitive design and robust features in our desktop and mobile software provide powerful insights and monitoring of your data and operations. Reduce IT resource strain by having us handle the software development, network, IT infrastructure, and maintenance so you can focus on production and profitability.



Looking for help in Ignition? TankLogix is a Registered Integrator with Inductive Automation. Many of our engineers have attended Ignition Core and Ignition Advanced training. TankLogix is ready to assist with any of your Ignition needs.

## COUNT I

### TankLogix's Infringement of the U.S. Patent Nos. 8,649,909.

25.    SitePro repeats and realleges, as if fully set forth herein, the allegations set forth in the foregoing paragraphs of this Complaint.

26.    TankLogix directly infringed and continues to directly infringe, under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, at least claims 1-21 of the '909 Patent by manufacturing, using, selling, offering to sell, and/or importing into the United States the Accused System.

27.    TankLogix has been and is indirectly infringing the '909 Patent by actively inducing or contributing to the direct infringement by others of the '909 Patent in the United States, the State of Texas, and this District.

28.    TankLogix also has been and is now knowingly and intentionally inducing infringement of at least claims 1-21 of the '909 Patent in violation of 35 U.S.C. § 271(b). TankLogix has had knowledge of the '909 Patent and the infringing nature of the Accused System and other similar systems since at least the filing and service of this Complaint.

29.    TankLogix specifically intended and was aware that the ordinary and customary use of the Accused System and other similar systems would infringe the '909 Patent.

30.    TankLogix further took active steps to encourage end users to use and operate the Accused System and other similar systems, despite knowing of the '909 Patent, in a manner they knew to directly infringe at least claims 1-21 of the '909 Patent.  Further, TankLogix provided product manuals and other technical information that cause their subscribers, customers, and other third parties to use and to operate the Accused System and other systems for their ordinary and customary use, such that TankLogix's customers and other third parties have directly infringed the

'909 Patent, through the normal and customary use of the Accused System and other similar systems.

31.    TankLogix also has been and are now in violation of 35 U.S.C. § 271(c) by contributing to infringement of at least claims 1-21 of the '909 Patent, literally and/or under the doctrine of equivalents, by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, the Accused System and other similar systems with knowledge of the '909 Patent and knowing that the Accused System and other similar systems are especially made or especially adapted for use in the infringement of the '909 Patent, and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

32.    TankLogix's infringement (both direct and indirect) of the '909 Patent has been, and continues to be, with full knowledge of the '909 Patent, since at least as early as the filing of this lawsuit, or as early as TankLogix employees have accessed the patent information on SitePro's website.

33.    For example, Claim 1 of the '909 Patent recites:

A system for remotely controlling a fluid-handling device of an oil well, a petro water disposal or re-injection facility, or a petroleum pumping station, the system comprising:

a command-center server having a data store storing multiple user accounts, each user account corresponding to a set of one or more oil wells, petro water disposal or re-injection facilities, or petroleum pumping stations, or a combination thereof, each set being operated by a different entity corresponding to the respective user account; and

a plurality of geographically distributed site master controllers, each site master controller corresponding to a respective one of the oil wells, petro water disposal or re-injection facilities, or petroleum pumping stations, each site master controller comprising:

      a communication module operable to communicate with a plurality of fluid-handling devices;

a network interface;

memory; and

one or more processors communicatively coupled to the communication module, the network interface, and the memory, wherein the memory stores instructions that when executed by the processors cause the processors to effectuate steps comprising:

receiving, via the network interface, from the command-center server, a plurality of commands encoded in a first protocol to control the fluid-handling devices from a user corresponding to one of the user accounts, different commands among the plurality of commands being directed to different fluid handling devices among the plurality of fluid-handling devices;

for at least some of the plurality of commands, determining a plurality of different target states of a given one of the fluid-handling devices over time, wherein the respective site-master controller is operative to maintain control of the fluid handling devices in the absence of a network connection to the command-center server;

translating the plurality of commands into translated commands encoded in a plurality of protocols different from the first protocol, each translated command being translated into a protocol among the plurality of protocols suitable for a fluid-handling device to which the respective command is directed, the at least some of the translated command being operative to cause a local controller of the given fluid-handling device to drive the given fluid-handling device to the plurality of different target states, the local controller being responsive to the translated commands and feedback from the given fluid-handling device indicative of whether the given fluid-handling device is in a targeted state; and

sending the translated commands to respective local controllers of the respective fluid-handling devices to which the respective commands are directed.

34.    By way of example, the Accused System meets every element of Claim 1.

35.    To the extent the preamble is found limiting, the Accused System is a system for remotely controlling a fluid-handling device of an oil well, a petro water disposal or re-injection facility, or a petroleum pumping station:



[https://www.tanklogix.com/](https://www.tanklogix.com/).

[https://www.tanklogix.com/hosted-ignition/](https://www.tanklogix.com/hosted-ignition/) (annotated).

36.     As shown in the example below, the Accused System further comprises a command-center server having a data store storing multiple user accounts, each user account corresponding to a set of one or more oil wells, petro water disposal or re-injection facilities, or petroleum pumping stations, or a combination thereof, each set being operated by a different entity corresponding to the respective user account.



https://www.tanklogix.com/hosted-ignition/.   On information and belief, TankLogix's Hosted

Ignition products comprise a command center server that provides access to TankLogix customer

organizations (different entities) to monitor field devices (oil wells, petro water disposal or re-

injection facilities, or petroleum pumping stations).

37.     As in the examples shown below, each customer organization (different entity) can

access the system via unlimited clients and can manage multiple user accounts.



https://www.tanklogix.com/hosted-ignition/ (annotated).



https://www.tanklogix.com/hosted-ignition/ (annotated).

38.     As shown in the example below from the Ignition user manual, the Accused System further comprises a plurality of geographically distributed site master controllers, each site master controller corresponding to a respective one of the oil wells, petro water disposal or re-injection facilities, or petroleum pumping stations.



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture.    A

PLC is an example of such a "geographically distributed site master controller," corresponding to

a "petro water disposal or re-injection facility[y]."

39.    As shown in the examples below, the Accused System further comprises a

communication module operable to communicate with a plurality of fluid-handling devices, such

as tanks.



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture.



https://www.tanklogix.com/.

40.     As shown in the example below, the Accused System further comprises a network interface.



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture.    The

PLC necessarily has a network interface to communicate both to the remote command-center

server and to the various networked devices local to the site.

    41.    As shown in the example below, the Accused System further comprises memory.



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture. PLCs

contain memory to run the programs to manage the SCADA system on-site.

42.    As shown in the example below, the Accused System further comprises one or more

processors communicatively coupled to the communication module, the network interface, and the

memory, wherein the memory stores instructions that when executed by the processors cause the

processors to effectuate steps.  In the Accused Product, the PLC has at least one processor coupled

to the communication module, the network interface, and the memory to run the programs stored

in the memory.  *See, e.g.*, ¶¶ 39–41 above.

43.    As shown in the example below, the Accused System further comprises receiving,

via the network interface, from the command-center server, a plurality of commands encoded in a

first protocol to control the fluid-handling devices from a user corresponding to one of the user

accounts, different commands among the plurality of commands being directed to different fluid handling devices among the plurality of fluid-handling devices:



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture.

## Web-based HMI and SCADA applications deployment

Using web technologies, you can access PLCs and connect to SQL databases on any platform. Ignition provides the common HMI/SCADA capabilities, but in an easier and more efficient way. Create runtime clients and sessions that show current or past data, interact with your other systems and devices, create displays and controls for anything wired into your system. See and manage your entire system from one place.



https://www.docs.inductiveautomation.com/docs/8.1/getting-started/introducing-ignition.

44.     As shown in the example below, the Accused System further comprises for at least some of the plurality of commands, determining a plurality of different target states of a given one of the fluid-handling devices over time, wherein the respective site-master controller is operative to maintain control of the fluid handling devices in the absence of a network connection to the command-center server.



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture.    On information and belief, the Accused System also includes at least some fluid-handling devices such as VFDs (variable frequency drives) including proportional-integral-derivative (PID) controllers that determine a plurality of target states over time.



https://www.tanklogix.com/vfd-controls-and-motors/.

45.     As shown in the example below, the Accused System further comprises translating the plurality of commands into translated commands encoded in a plurality of protocols different from the first protocol, each translated command being translated into a protocol among the plurality of protocols suitable for a fluid-handling device to which the respective command is directed, the at least some of the translated command being operative to cause a local controller of the given fluid-handling device to drive the given fluid-handling device to the plurality of different target states, the local controller being responsive to the translated commands and feedback from the given fluid-handling device indicative of whether the given fluid-handling device is in a targeted state. The local controller is, for example, a variable-frequency drive (VFD). For example, the facility includes a fluid-handling device (e.g., pump with an actuator) and a motor powered by a VFD:



[https://www.tanklogix.com/vfd-controls-and-motors/](https://www.tanklogix.com/vfd-controls-and-motors/).    On information and belief, the Accused System is configured to translate commands from the server system in TCP/IP to commands in a variety of protocols, such as digital or analog outputs understood by the various fluid-handling devices.

46.    As shown in the example below, the Accused System further comprises sending the translated commands to respective local controllers of the respective fluid-handling devices to which the respective commands are directed.



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture.    For
example, on information and belief, the PLCs receive commands in a protocol such as TCP/IP,
received via, for example, a TCP/IP connection, and the send the commands to the fluid-handling
devices to which the respective commands are directed via the appropriate protocol.

47.    As a result of TankLogix's infringement of the '909 Patent, SitePro has been
damaged and is entitled to recover from TankLogix the damages sustained by SitePro as a result
of TankLogix's acts in an amount adequate to compensate SitePro for TankLogix's infringement,
subject to proof at trial.

48.    TankLogix's knowing, willful, and deliberate infringement of the claims of the '909
Patent is in conscious disregard of SitePro's rights, makes this case exceptional within the meaning
of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys'
fees pursuant to 35 U.S.C. § 285.

49.    To the extent TankLogix continues to implement other systems that are similar to the Accused System, and/or utilize Ignition or similar platforms, such activities constitute continued willful infringement by TankLogix.

## COUNT II

### TankLogix's Infringement of the U.S. Patent Nos. 9,898,014.

50.    SitePro repeats and realleges as if fully set forth herein, the allegations set forth in the foregoing paragraphs of this Complaint.

51.    TankLogix directly infringed and continues to directly infringe, under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, at least claims 1-23 of the '014 Patent by manufacturing, using, selling, offering to sell, and/or importing into the United States the Accused System.

52.    TankLogix has been and is indirectly infringing the '014 Patent by actively inducing or contributing to the direct infringement by others of the '014 Patent in the United States, the State of Texas, and this District.

53.    TankLogix also has been and is now knowingly and intentionally inducing infringement of at least claims 1-23 of the '014 Patent in violation of 35 U.S.C. § 271(b). TankLogix has had knowledge of the '014 Patent and the infringing nature of the Accused System and other similar systems since at least the filing and service of this Complaint.

54.    TankLogix specifically intended and was aware that the ordinary and customary use of the Accused System and other similar systems would infringe the '014 Patent.

55.    TankLogix further took active steps to encourage end users to use and operate the Accused System and other similar systems, despite knowing of the '014 Patent, in a manner they knew to directly infringe at least claims 1-23 of the '014 Patent.  Further, TankLogix provided product manuals and other technical information that cause their subscribers, customers, and other

third parties to use and to operate the Accused System and other systems for their ordinary and customary use, such that TankLogix's customers and other third parties have directly infringed the '014 Patent, through the normal and customary use of the Accused System and other similar systems.

56.    TankLogix also has been and are now in violation of 35 U.S.C. § 271(c) by contributing to infringement of at least claims 1-23 of the '014 Patent, literally and/or under the doctrine of equivalents, by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, the Accused System and other similar systems with knowledge of the '014 Patent and knowing that the Accused System and other similar systems are especially made or especially adapted for use in the infringement of the '014 Patent, and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

57.    TankLogix's infringement (both direct and indirect) of the '014 Patent has been, and continues to be, with full knowledge of the '014 Patent, since at least as early as the filing of this lawsuit, or as early as TankLogix employees have accessed the patent information on SitePro's website.

58.    For example, Claim 1 of the '014 Patent recites:

A hosted, web-based, remote industrial monitoring and control system for geographically distributed facilities in oil and gas fields, the system comprising:

a computer-implemented datastore storing:

> a plurality of accounts, each account corresponding to an entity operating one or more geographically distributed oil or gas facilities, the accounts associating different oil or gas facilities with different entities; and

> network addresses by which industrial monitoring or control equipment at the facilities is accessible via cellular network connections, the monitoring or control equipment including sensors or actuators;

a computer-implemented facility-interface module or modules configured to obtain data from the sensors at the facilities and send commands to the actuators at the facilities via the cellular network connections; and

a computer-implemented web-interface module or modules configured to send instructions to present control interfaces in web browsers executing on user computing devices logged in to the accounts and to receive commands to control actuators from the user computing devices,

wherein the system is configured to receive, with the web-interface module or modules, a user command to actuate an actuator entered via a presented control interface, identify a network address in the datastore corresponding to a facility at which the actuator is located, and send instructions with the facility-interface module or modules to the facility to actuate the actuator, and

wherein:

> the plurality of accounts include a first account, a second account, a third account, and a fourth account;

> the first account corresponds to a first group of oil or gas facilities, users of the first account being authorized to send commands to remotely control fluid handling devices at the first group of oil or gas facilities;

> the second account corresponds to a second group of oil or gas facilities, the first group being different from the second group, users of the second account being authorized to send commands to remotely control fluid handling devices at the second group of oil or gas facilities;

> the third account corresponds to the first group of oil or gas facilities, users of the third account being authorized to view reports of data from fluid handling devices at the first group of oil or gas facilities; and

> the fourth account corresponds to the second group of oil or gas facilities, users of the fourth account being authorized to view reports of data from fluid handling devices at the second group of oil or gas facilities.

59.    By way of example, the Accused System meets every element of Claim 1.

60.    To the extent the preamble is found limiting, the Accused System is a hosted, web-based, remote industrial monitoring and control system for geographically distributed facilities in oil and gas fields:



https://www.tanklogix.com/.

https://www.tanklogix.com/hosted-ignition/ (annotated).



https://www.docs.inductiveautomation.com/docs/8.1/getting-started/introducing-ignition.

61.    As shown in the example below, the Accused System further comprises a computer-implemented datastore:



https://www.docs.inductiveautomation.com/docs/8.1/getting-started/introducing-ignition.

62.    As shown in the example below, the Accused System further comprises a plurality of accounts, each account corresponding to an entity operating one or more geographically

distributed oil or gas facilities, the accounts associating different oil or gas facilities with different entities:



[https://www.tanklogix.com/hosted-ignition/](https://www.tanklogix.com/hosted-ignition/). On information and belief, TankLogix Hosted Ignition products provide access to TankLogix customer organizations (different entities) to monitor their organizations' oil or gas facilities. As in the examples shown below, each customer organization (different entity) can access the system via unlimited clients and can manage multiple user accounts.



[https://www.tanklogix.com/hosted-ignition/](https://www.tanklogix.com/hosted-ignition/) (annotated).

29



https://www.tanklogix.com/hosted-ignition/ (annotated).

63.    As shown in the example below, the Accused System further comprises network addresses by which industrial monitoring or control equipment at the facilities is accessible via cellular network connections, the monitoring or control equipment including sensors or actuators:

### Tank Monitoring

TankLogix provides a complete liquid inventory management system, the TankWarden. TankWarden empowers producers by giving them complete control over their liquid inventory and distribution.

- ✓ Eliminate manual tank gauging
- ✓ Web-based data tracking
- ✓ Cellular and satellite communication for even the most remote locations
- ✓ Single or dual level, high-precision, magnetostrictive sensors
- ✓ TankLogix brand sensors are oil & gas field grade, made in USA
- ✓ Provide flow and pressure readings to monitor pumps, flow lines, and vessels

https://www.tanklogix.com/tank-monitoring/.

### Communications Systems Cellular and Satellite

TankLogix understands how important information is to business owners and managers. With cellular and Satellite technology, the TankLogix system can be used anywhere in the world, providing custom solutions to fit any tank owner or transport company.

https://www.tanklogix.com/tank-monitoring/.

64.    As shown in the example below, the Accused System further comprises a computer-implemented facility-interface module or modules configured to obtain data from the sensors at

the facilities and send commands to the actuators at the facilities via the cellular network connections:



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture.    The Ignition Server shown by the schematic above includes a computer-implemented facility-interface module or modules configured to obtain data from the sensors at the facilities and send commands to the actuators (connected to the Field Device) at the facilities via the network connections.

65.    As shown in the example below, the Accused System further comprises a computer-implemented web-interface module or modules configured to send instructions to present control interfaces in web browsers executing on user computing devices logged in to the accounts and to receive commands to control actuators from the user computing devices.  Control interfaces are presented in web browsers executing on user computing devices logged in to the accounts (the Web-Launched Ignition Clients shown by the schematic below):



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture.

66.    As shown in the example below, the Accused System further comprises a system configured to receive, with the web-interface module or modules, a user command to actuate an actuator entered via a presented control interface, identify a network address in the datastore corresponding to a facility at which the actuator is located, and send instructions with the facility-interface module or modules to the facility to actuate the actuator.  The Accused Product receives a command from a computing device, for example, the Web-Launched Ignition Clients in the schematic below:



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture.    The

Accused Product receives a command via a control interface such as the example shown below:



https://www.tanklogix.com/hosted-ignition/.  A network address is identified in the datastore corresponding to a facility at which the actuator is located.  Examples of the datastore include the SQL databases described in the Ignition User Manual:

# Web-based HMI and SCADA applications deployment #

Using web technologies, you can access PLCs and connect to SQL databases on any platform. Ignition provides the common HMI/SCADA capabilities, but in an easier and more efficient way. Create runtime clients and sessions that show current or past data, interact with your other systems and devices, create displays and controls for anything wired into your system. See and manage your entire system from one place.



https://www.docs.inductiveautomation.com/docs/8.1/getting-started/introducing-ignition.      The Accused System sends instructions with the facility-interface module or modules to the facility (for example, the PLC or Field Device in the schematic below) to actuate the actuator.



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture.

67.    On information and belief, the Accused System further comprises a plurality of accounts including a first account, a second account, a third account, and a fourth account.  On information and belief, TankLogix Hosted Ignition products provide access to TankLogix customer organizations (different entities) to monitor field devices (oil wells, petro water disposal or re-injection facilities, or petroleum pumping stations).  As in the examples shown below, each customer organization (different entity) can access the system via unlimited clients and can manage multiple user accounts, including at least a first account, second account, third account and a fourth account:



https://www.tanklogix.com/hosted-ignition/ (annotated).

https://www.tanklogix.com/hosted-ignition/ (annotated).

68.     As shown in the examples below, the Accused System further comprises a first account corresponding to a first group of oil or gas facilities, users of the first account being authorized to send commands to remotely control fluid handling devices at the first group of oil or gas facilities:



https://www.tanklogix.com/hosted-ignition/ (annotated).

https://www.tanklogix.com/hosted-ignition/ (annotated).

69.     As shown in the examples below, the Accused System further comprises a second account corresponding to a second group of oil or gas facilities, the first group being different from the second group, users of the second account being authorized to send commands to remotely control fluid handling devices at the second group of oil or gas facilities:



[https://www.tanklogix.com/hosted-ignition/](https://www.tanklogix.com/hosted-ignition/) (annotated).

70.      As shown in the examples below, the Accused System further comprises a third account corresponding to the first group of oil or gas facilities, users of the third account being authorized to view reports of data from fluid handling devices at the first group of oil or gas facilities:



[https://www.tanklogix.com/hosted-ignition/](https://www.tanklogix.com/hosted-ignition/) (annotated).

[https://www.tanklogix.com/hosted-ignition/](https://www.tanklogix.com/hosted-ignition/) (annotated).



https://www.tanklogix.com/hosted-ignition/.

71.     As shown in the example below, the Accused System further comprises a fourth account corresponding to the second group of oil or gas facilities, users of the fourth account being authorized to view reports of data from fluid handling devices at the second group of oil or gas facilities.



https://www.tanklogix.com/hosted-ignition/ (annotated).



[https://www.tanklogix.com/hosted-ignition/](https://www.tanklogix.com/hosted-ignition/) (annotated).



[https://www.tanklogix.com/hosted-ignition/](https://www.tanklogix.com/hosted-ignition/).

72.     As a result of TankLogix's infringement of the '014 Patent, SitePro has been damaged and is entitled to recover from TankLogix the damages sustained by SitePro as a result of TankLogix's acts in an amount adequate to compensate SitePro for TankLogix's infringement, subject to proof at trial.

73.     TankLogix's knowing, willful, and deliberate infringement of the claims of the '014 Patent is in conscious disregard of SitePro's rights, makes this case exceptional within the meaning

of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys'

fees pursuant to 35 U.S.C. § 285.

74.     To the extent TankLogix continues to implement other systems that are similar to

the Accused System, and/or utilize Ignition or similar platforms, such activities constitute

continued willful infringement by TankLogix.

**COUNT III**

**TankLogix's Infringement of the U.S. Patent Nos. 11,175,680**

75.     SitePro repeats and realleges as if fully set forth herein, the allegations set forth in

the foregoing paragraphs of this Complaint.

76.     TankLogix directly infringed and continues to directly infringe, under 35 U.S.C.

§ 271(a), literally and/or under the doctrine of equivalents, at least claims 1-20 of the '680 Patent

by manufacturing, using, selling, offering to sell, and/or importing into the United States the

Accused System.

77.     TankLogix has been and is indirectly infringing the '680 Patent by actively

inducing or contributing to the direct infringement by others of the '680 Patent in the United States,

the State of Texas, and this District.

78.     TankLogix also has been and is now knowingly and intentionally inducing

infringement of at least claims 1-20 of the '680 Patent in violation of 35 U.S.C. § 271(b).

TankLogix has had knowledge of the '680 Patent and the infringing nature of the Accused System

and other similar systems since at least the filing and service of this Complaint.

79.     TankLogix specifically intended and was aware that the ordinary and customary

use of the Accused System and other similar systems would infringe the '680 Patent.

80.     TankLogix further took active steps to encourage end users to use and operate the

Accused System and other similar systems, despite knowing of the '680 Patent, in a manner they

knew to directly infringe at least claims 1-20 of the '680 Patent.  Further, TankLogix provided product manuals and other technical information that cause their subscribers, customers, and other third parties to use and to operate the Accused System and other systems for their ordinary and customary use, such that TankLogix's customers and other third parties have directly infringed the '680 Patent, through the normal and customary use of the Accused System and other similar systems.

81.    TankLogix also has been and are now in violation of 35 U.S.C. § 271(c) by contributing to infringement of at least claims 1-20 of the '680 Patent, literally and/or under the doctrine of equivalents, by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, the Accused System and other similar systems with knowledge of the '680 Patent and knowing that the Accused System and other similar systems are especially made or especially adapted for use in the infringement of the '680 Patent, and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

82.    TankLogix's infringement (both direct and indirect) of the '680 Patent has been, and continues to be, with full knowledge of the '680 Patent, since at least as early as the filing of this lawsuit, or as early as TankLogix employees have accessed the patent information on SitePro's website.

83.    For example, Claim 1 of the '680 Patent recites:

A non-transitory, machine-readable medium comprising instructions to effectuate operations, the operations comprising:

receiving, with a server, a command comprising a target value of a fluid-handling device from a computing device via a control interface, wherein the command is received in association with a record stored on a datastore;

determining, with the server, a network address of a network based on the record, wherein the network address identifies a controller of the fluid-handling device, and wherein the

controller accesses a sensor to measure a fluid being handled by the fluid-handling device and an actuator of the fluid-handling device;

sending, with the server, the target value to the network address via the network;

receiving, with the controller, a measurement of the fluid by the sensor;

determining, with the controller, whether the measurement satisfies the target value;

in response to a determination that the measurement does not satisfy the target value, obtaining, with the controller, a set point based on the command; and

controlling, with the controller, the actuator based on the set point.

84.    By way of example, the Accused System meets every element of Claim 1.

85.    To the extent the preamble is found limiting, the accused TankLogix products are each a non-transitory, machine-readable medium comprising instructions to effectuate operations. As the example below shows, the Accused System comprises cloud-based infrastructure. This infrastructure hosts at least the Ignition platform, which comprises a machine-readable medium comprising instructions to effectuate operations, including, as examples, controlling field devices and monitoring data and operations.

## Comprehensive Hosted SCADA

TankLogix Hosted SCADA (Supervisory Control and Data Acquisition) is powered by Inductive Automation's Ignition platform. Easily connect with, collect data from, and control your field devices over our secure network. Your data is safely hosted on our cloud-based infrastructure, providing top-tier reliability and integrity. Intuitive design and robust features in our desktop and mobile software provide powerful insights and monitoring of your data and operations. Reduce IT resource strain by having us handle the software development, network, IT infrastructure, and maintenance so you can focus on production and profitability.

https://www.tanklogix.com/hosted-ignition/.

86.    As shown in the examples below, the Accused System further comprises receiving, with a server, a command comprising a target value of a fluid-handling device from a computing device via a control interface, wherein the command is received in association with a record stored on a datastore:



[https://www.tanklogix.com/hosted-ignition/](https://www.tanklogix.com/hosted-ignition/) (annotated).  The Accused System includes servers that host the Ignition platform. As shown in the example below, the Ignition platform includes an Ignition Server that receives commands from Web-Launched Ignition Clients (computing devices).



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture.    As

shown in the example below, the Web-Launched Ignition Clients comprise HMIs (control

interfaces) that allow users to input commands that are received by the server:

## Web-based HMI and SCADA applications deployment #

Using web technologies, you can access PLCs and connect to SQL databases on any platform.
Ignition provides the common HMI/SCADA capabilities, but in an easier and more efficient way.
Create runtime clients and sessions that show current or past data, interact with your other
systems and devices, create displays and controls for anything wired into your system. See and
manage your entire system from one place.



https://www.docs.inductiveautomation.com/docs/8.1/getting-started/introducing-ignition.    These

commands are received in association with a record (for example, a tag) stored on a datastore.

87.    As shown in the example below, the Accused System further comprises

determining, with the server, a network address of a network based on the record, wherein the

network address identifies a controller of the fluid-handling device, and wherein the controller

accesses a sensor to measure a fluid being handled by the fluid-handling device and an actuator of

the fluid-handling device:

47



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture.    The

server (for example, the Ignition Server) necessarily identifies a network address of a controller of

a fluid-handling device (for example, a PLC).  As shown in the example below, the controller (e.g.,

PLC) accesses a sensor to measure a fluid being handled by the fluid-handling device (e.g.,

Realtime & historical data views) and an actuator of the fluid-handling device (e.g., Remote

control):



https://www.tanklogix.com/hosted-ignition/ (annotated).

88.    As shown in the example below, the Accused System further comprises sending, with the server, the target value to the network address via the network:



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture.

89.    As shown in the example below, the Accused System further comprises receiving, with the controller, a measurement of the fluid by the sensor:



https://www.tanklogix.com/.

https://www.tanklogix.com/hosted-ignition/ (annotated).

90.    As shown in the example below, the Accused System further comprises determining, with the controller, whether the measurement satisfies the target value:



[https://www.tanklogix.com/hosted-ignition/](https://www.tanklogix.com/hosted-ignition/) (annotated).

91.    As shown in the examples below, the Accused System further comprises in response to a determination that the measurement does not satisfy the target value, obtaining, with the controller, a set point based on the command:



[https://www.tanklogix.com/](https://www.tanklogix.com/).



[https://www.tanklogix.com/hosted-ignition/](https://www.tanklogix.com/hosted-ignition/) (annotated).

92.     As shown in the example below, the Accused System further comprises controlling, with the controller, the actuator based on the set point:



[https://www.tanklogix.com/](https://www.tanklogix.com/).



[https://www.tanklogix.com/hosted-ignition/](https://www.tanklogix.com/hosted-ignition/) (annotated).

93.     As a result of TankLogix's infringement of the '680 Patent, SitePro has been damaged and is entitled to recover from TankLogix the damages sustained by SitePro as a result of TankLogix's acts in an amount adequate to compensate SitePro for TankLogix's infringement, subject to proof at trial.

94.     TankLogix's knowing, willful, and deliberate infringement of the claims of the '680 Patent is in conscious disregard of SitePro's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

95.     To the extent TankLogix continues to implement other systems that are similar to the Accused System, and/or utilize Ignition or similar platforms, such activities constitute continued willful infringement by TankLogix.

**COUNT IV**

**TankLogix's Infringement of the U.S. Patent Nos. 11,726,504**

96.     SitePro repeats and realleges as if fully set forth herein, the allegations set forth in the foregoing paragraphs of this Complaint.

97.     TankLogix directly infringed and continues to directly infringe, under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, at least claims 1-20 of the '504 Patent by manufacturing, using, selling, offering to sell, and/or importing into the United States the Accused System.

98.     TankLogix has been and is indirectly infringing the '504 Patent by actively inducing or contributing to the direct infringement by others of the '504 Patent in the United States, the State of Texas, and this District.

99.     TankLogix also has been and is now knowingly and intentionally inducing infringement of at least claims 1-20 of the '504 Patent in violation of 35 U.S.C. § 271(b). TankLogix has had knowledge of the '504 Patent and the infringing nature of the Accused System and other similar systems since at least the filing and service of this Complaint.

100.    TankLogix specifically intended and was aware that the ordinary and customary use of the Accused System and other similar systems would infringe the '504 Patent.

101.    TankLogix further took active steps to encourage end users to use and operate the Accused System and other similar systems, despite knowing of the '504 Patent, in a manner they knew to directly infringe at least claims 1-20 of the '504 Patent.  Further, TankLogix provided product manuals and other technical information that cause their subscribers, customers, and other third parties to use and to operate the Accused System and other systems for their ordinary and customary use, such that TankLogix's customers and other third parties have directly infringed the

'504 Patent, through the normal and customary use of the Accused System and other similar systems.

102.    TankLogix also has been and are now in violation of 35 U.S.C. § 271(c) by contributing to infringement of at least claims 1-20 of the '504 Patent, literally and/or under the doctrine of equivalents, by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, the Accused System and other similar systems with knowledge of the '504 Patent and knowing that the Accused System and other similar systems are especially made or especially adapted for use in the infringement of the '504 Patent, and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

103.    TankLogix's infringement (both direct and indirect) of the '504 Patent has been, and continues to be, with full knowledge of the '504 Patent, since at least as early as the filing of this lawsuit, or as early as TankLogix employees have accessed the patent information on SitePro's website.

104.    For example, Claim 1 of the '504 Patent recites:

A fluid processing system, comprising:

a first computer system disposed at a first fluid handling site, wherein the first computer system is configured to:

> receive information comprising one or more properties of a first fluid from one or more sensors disposed at a first fluid tank itself disposed at the first fluid-handling site, the fluid-handling site comprising one or more fluid-handling devices, the one or more fluid-handling devices comprising one or more of a first pump, a first filter, and a first valve; and

> provide remote control of a first fluid-handling device of the one or more fluid-handling devices; and

a server system wherein the server system has memory storing instructions that, when executed, effectuate operations comprising:

receiving, with the server system, from the first computer system, via a network, a first fluid property of the one or more properties associated with the first fluid sensed by a first sensor of the one or more sensors;

obtaining, with the server system, credentials from a first client computing device;

determining, with the server system, based on the credentials, that a user of the first client computing device is authorized to interact with the first fluid handling site, wherein the server system hosts data about other fluid handling sites the user is not authorized to interact;

after the determination, providing, with the server system, via the network, information by which a first client computing device presents a user interface indicating the first fluid property, the first client computing device being remote from the server system and the first computer system;

receiving, with the server system, from the first client computing device, a first command to change a state of the first fluid-handling device; and

causing, with the server system, the first computer system disposed at the first fluid handling site to effectuate the command by changing the state of the first fluid-handling device to a sequence of different target states that change over time.

105.    By way of example, the Accused System meets every element of Claim 1.

106.    To the extent the preamble is found limiting, the accused TankLogix products are each a fluid processing system:



https://www.tanklogix.com/.

107.    As shown in the example below, the Accused System further comprises a first computer system disposed at a first fluid handling site:



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture.

## Comprehensive Hosted SCADA

TankLogix Hosted SCADA (Supervisory Control and Data Acquisition) is powered by Inductive Automation's Ignition platform. Easily connect with, collect data from, and control your field devices over our secure network. Your data is safely hosted on our cloud-based infrastructure, providing top-tier reliability and integrity. Intuitive design and robust features in our desktop and mobile software provide powerful insights and monitoring of your data and operations. Reduce IT resource strain by having us handle the software development, network, IT infrastructure, and maintenance so you can focus on production and profitability.

https://www.tanklogix.com/hosted-ignition/.

108.    As shown in the example below, the Accused System further comprises receiving information comprising one or more properties of a first fluid from one or more sensors disposed at a first fluid tank itself disposed at the first fluid-handling site, the fluid-handling site comprising one or more fluid-handling devices, the one or more fluid-handling devices comprising one or more of a first pump, a first filter, and a first valve:







## Produced Wastewater

This excess water slows production because the tanks that are used to store the water become full. Therefore, no oil or gas can be produced because there is no place to store the water. The TankWarden System can help automate truck dispatching to ensure that the producer doesn't have to slow down production.

TankLogix recognizes that trucking this water is expensive, which is why minimizing trucking expenses can greatly increase the bottom line. The Tank Warden System enhances transparency and accountability for both operators and transporters. The Tank Warden System can be configured to restrict access to the valve if the driver of the truck is not verified; it can also report instantly the amount of water/product that has been taken. This system has successfully enhanced tank security, while reducing theft and human error.

TankLogix has implemented the Tank Warden System at water disposal sites as well. These customers especially enjoy the automatic tank gauging system because they don't have to employ someone to permanently watch the tanks.
TankLogix has also provided other automated tank monitoring and field monitoring services to water disposal companies. Some of the other devices TankLogix can monitor at the wellhead are:

- ✅ Flow Meters
- ✅ Pumps
- ✅ H$_2$S and other gasses
- ✅ Premium Sensors

https://www.tanklogix.com/hosted-ignition/. The above images show at least a pump and a valve. On information and belief, the Accused System includes filters, as is typical for oil and SWD facilities.

109.    As shown in the example below, the Accused System further comprises providing remote control of a first fluid-handling device of the one or more fluid-handling devices:



https://www.tanklogix.com/hosted-ignition/ (annotated).

110.    As shown in the example below, the Accused System further comprises a server system wherein the server system has memory storing instructions that, when executed, effectuate operations:



https://www.tanklogix.com/hosted-ignition/ (annotated). The Accused System includes servers that host the Ignition platform. As shown in the example below, the Ignition platform includes an Ignition Server that effectuates operations (e.g., by executing commands from Web-Launched Ignition Clients).



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture.

111.    As shown in the example below, the Accused System further comprises receiving, with the server system, from the first computer system, via a network, a first fluid property of the one or more properties associated with the first fluid sensed by a first sensor of the one or more sensors:

## IIoT Architecture



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture.





https://www.tanklogix.com/hosted-ignition/.

112.    As shown in the example below from the TankLogix mobile application, the Accused System further comprises obtaining, with the server system, credentials from a first client computing device:



113.    As shown in the example below, the Accused System further comprises determining, with the server system, based on the credentials, that a user of the first client

computing device is authorized to interact with the first fluid handling site, wherein the server system hosts data about other fluid handling sites the user is not authorized to interact:



https://www.tanklogix.com/hosted-ignition/. On information and belief, the Accused System provides access to TankLogix customer organizations to monitor fluid handling sites.



https://www.tanklogix.com/hosted-ignition/ (annotated).

114.    As shown in the example below, the Accused System further comprises after the determination, providing, with the server system, via the network, information by which a first

client computing device presents a user interface indicating the first fluid property, the first client computing device being remote from the server system and the first computer system:



https://www.docs.inductiveautomation.com/docs/8.1/system-architectures/iiot-architecture.





https://www.tanklogix.com/hosted-ignition/.

115.    As shown in the examples below, the Accused System further comprises receiving, with the server system, from the first client computing device, a first command to change a state of the first fluid-handling device:



https://www.tanklogix.com/hosted-ignition/.



https://tanklogix.com/vfd-controls-and-motors/.

116.    As shown in the examples below, the Accused System further comprises causing, with the server system, the first computer system disposed at the first fluid handling site to effectuate the command by changing the state of the first fluid-handling device to a sequence of different target states that change over time:



https://www.tanklogix.com/hosted-ignition/.



https://tanklogix.com/vfd-controls-and-motors/. On information and belief, the Accused System also includes VFDs (variable frequency drives) including proportional-integral-derivative (PID) controllers that determine a plurality of target states over time.

117.    As a result of TankLogix's infringement of the '504 Patent, SitePro has been damaged and is entitled to recover from TankLogix the damages sustained by SitePro as a result of TankLogix's acts in an amount adequate to compensate SitePro for TankLogix's infringement, subject to proof at trial.

118.    TankLogix's knowing, willful, and deliberate infringement of the claims of the '504 Patent is in conscious disregard of SitePro's rights, makes this case exceptional within the meaning

of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

119.    To the extent TankLogix continues to implement other systems that are similar to the Accused System, and/or utilize Ignition or similar platforms, such activities constitute continued willful infringement by TankLogix.

## PERMANENT INJUNCTION

120.    SitePro repeats and realleges, as is fully set forth herein, the allegations set forth in the foregoing paragraphs of this Complaint.

121.    SitePro seeks a permanent injunction incorporating the relief sought above on a preliminary basis, and further:

(a)    Barring Defendant TankLogix from competing with SitePro;

(b)    Providing for all additional restrictions necessary to protect SitePro from the harm likely to result from Defendant TankLogix's continued infringing conduct.

122.    Permanent injunctive relief against TankLogix is appropriate because, as SitePro will demonstrate through separate motion and briefing:

(a)    Defendant TankLogix's conduct has caused and will continue to cause irreparable injury to SitePro;

(b)    Monetary damages will be inadequate to remedy the injury;

(c)    An injunction is warranted considering the balance of hardships between the parties; and

(d)    Issuing the injunction would not disserve the public interest.

*Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (citing *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

**JURY DEMAND**

123.    SitePro demands a jury trial on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, SitePro requests the Court enter judgment in SitePro's favor and against TankLogix as follows:

(a)    That TankLogix has directly infringed, either literally or under the doctrine of equivalents, the Asserted Patents in violation of 35 U.S.C. § 271(a);

(b)    That TankLogix has induced and/or contributed to infringement and/or is inducing and/or contributing to infringement of the Asserted Patents, either literally or under the doctrine of equivalents;

(c)    Awarding SitePro its damages suffered as a result of TankLogix's infringement, including, but not limited to, a reasonable royalty pursuant to 35 U.S.C. § 284, SitePro's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest to be proven at trial;

(d)    Awarding SitePro costs and expenses pursuant to 35 U.S.C. § 284 or as otherwise permitted by law;

(e)    Ordering a permanent injunction against all present and future infringing acts by TankLogix or, in the alternative, an award of an ongoing royalty;

(f)    Finding that TankLogix's infringement has been willful at least as of the date of this Complaint, and awarding SitePro appropriate enhances damages pursuant to 35 U.S.C. § 284;

(g)    Finding this case to be exceptional within the meaning of 35 U.S.C. § 285;

(h)    Awarding SitePro its costs, attorneys' fees, expenses, and interest;

        (i)      Granting SitePro such other and further relief as the Court deems just and

equitable.

Dated:  December 20, 2024              Respectfully submitted,

                       /s/ *M. Craig Tyler*
                       M. Craig Tyler
                       Texas State Bar No. 00794762
                       CTyler@perkinscoie.com
                       Andrew Kalamarides
                       Texas State Bar No. 24136939
                       AKalamarides@perkinscoie.com
                       Helena E.D. Burns (to be admitted *pro hac vice*)
                       Texas State Bar No. 24143961
                       HBurns@perkinscoie.com
                       **PERKINS COIE LLP**
                       405 Colorado Street, Suite 1700
                       Austin, Texas 78701
                       Tel: (737) 256-6100

                       Matthew Lutz (to be admitted *pro hac vice*)
                       Arizona State Bar No. 038546
                       MLutz@perkinscoie.com
                       **PERKINS COIE LLP**
                       2525 E. Camelback Road, Suite 500
                       Phoenix, Arizona 85016-4227
                       Tel: (602)-351-8068

                       *Attorneys for Plaintiff*
                       *SitePro, Inc.*